UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAMES C. MCCURDY,

    Plaintiff,

    v.

RIVERO, et al.,

    Defendants.

Case No. 17-01043 BLF (PR)

**ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT;
GRANTING MOTION TO DISMISS;
GRANTING MOTION TO STRIKE
SUR-REPLY; DENYING MOTION
FOR EXTENSION OF TIME AS
MOOT; SCREENING
SUPPLEMENTAL COMPLAINT;
DIRECTING PLAINTIFF TO FILE
NOTICE TO PROCEED WITH
EXHAUSTED CLAIM**

(Docket Nos. 67, 100 & 102)

Plaintiff, a state prisoner, filed a *pro se* civil rights complaint under 42 U.S.C. §

1983 against officials at San Quentin State Prison ("SQSP") and Pelican Bay State Prison

("PBSP").[1]  The Court found the amended complaint, (Docket No. 11), stated cognizable

claims under the Eighth Amendment.  (Docket No. 13 at 2-3.)  SQSP Defendants Alvarez,

Deal, Devers, Leighton, Pratt, Tootell, and Wu, along with PBSP Defendants Jacobsen,

McLean, and Thomas, filed a motion to dismiss the action for failure to comply with Rules

18(a) and 20(a) of the Federal Rules of Civil Procedure; to dismiss all claims against

---

[1] Plaintiff's claims against Defendants at other state institutions were severed and
transferred to the Eastern District of California.  (Docket No. 13 at 2, 4.)

certain SQSP Defendants for failure to allege any claims against them; to dismiss request for injunctive relief as moot; and for summary judgment for failure to exhaust administrative remedies before filing suit on all his claims, except for claims against Defendants Deal and Thomas. (Docket No. 67, hereafter "Mot.") SQSP Defendants Lee and Rivero filed notice of joinder to Defendants' motion. (Docket No. 80.) Plaintiff filed an opposition, (Docket No. 92), and Defendants filed a reply, (Docket No. 96).

Plaintiff then filed a "response" to Defendants' reply, (Docket No. 99), which Defendants move to strike under Local Rule 7-3(d). (Docket No. 100.) Plaintiff has filed a motion for an extension of time to file an opposition to Defendants' motion to strike. (Docket No. 102.) The motion for an extension of time is DENIED because no further briefing is necessary on this issue. In the order of service, the Court stated that any dispositive motion filed by Defendants would be deemed submitted as of the date the reply brief is due. (Docket No. 13 at 6.) Nor did Plaintiff obtain court approval prior to filing the additional papers as required under Local Rule 7-3(d). Accordingly, Defendants' motion to strike Plaintiff's sur-reply is GRANTED.

The Court granted Plaintiff an opportunity to file a supplemental complaint, which he did. (Docket No. 97.) Defendants filed an opposition to the filing of the supplemental complaint. (Docket No. 98.) The Court will screen the supplemental complaint below.

For the reasons stated below, Defendants' motion for summary judgment and motion to dismiss are **GRANTED**.

## DISCUSSION

### I.  <u>Plaintiff's Claims</u>

Plaintiff is currently incarcerated at California State Prison – Sacramento. (Docket No. 30.) The underlying incidents relevant to this action took place while Plaintiff was incarcerated at SQSP from June 24, 2014 to January 22, 2015, and PBSP from April 18, 2016 to February 7, 2017. (Am. Compl. at 6, 26, 41, 53.) Defendants Alvarez, Deal,

2

Devers, Lee, Leighton, Pratt, Rivero, Tootell, and Wu were medical staff at SQSP. (*Id.* at 2-3; Docket No. 54 at 15-16.) Defendants Jacobsen, Mclean, and Thomas were medical staff at PBSP. (Am. Compl. at 2-3.)

### A. Claims against SQSP Defendants

Plaintiff claims that when he arrived at SQSP on June 24, 2014, the medical staff improperly discontinued all his medications, including Tramadol and Gabapentin, because they were missing his medical records from the previous institution (Napa County Jail). (Am. Compl. at 6, 21-23.) Even after he signed a release form, the medical staff tapered him off Tramadol and Gabapentin after two weeks and ordered a less effective Ultram to manage his pain. (*Id.*) Plaintiff also alleges that on June 26, 2014, Defendant Dr. Deal improperly tapered his gabapentin. (*Id.* at 22.) Plaintiff claims he filed an inmate grievance regarding the tapering of the gabapentin, but Defendant Dr. Pratt improperly denied his grievance at the first level, told him that she would not give him narcotics for scar tissue, and refused to give him a copy of his medical records. (*Id.* at 23.)

Plaintiff also claims that Defendant Dr. Leighton improperly prescribed him Ibuprofen, Acetaminophen, and Elavil, which caused him to suffer side effects including vomiting, nausea, cramping, pain, loss of appetite, and trouble sleeping. (*Id.* at 6, 23.) Plaintiff claims that in December 2014, he was in pain, unable to sleep and eat, vomiting, and had diarrhea, but the "doctors" refused to see him. (*Id.* at 24.) Defendant Dr. Alvarez also refused to treat him on January 8, 2015. (*Id.* at 25.) Plaintiff also claims that he was forced to participate in the mental health delivery system at SQSP, and later improperly transferred to California Medical Facility ("CMF") without a hearing. (*Id.* at 6-7, 8, 26.) Plaintiff was incarcerated at SQSP until January 22, 2015. (*Id.* at 6, 26.)

### B. Claims Against PBSP Defendants

Plaintiff arrived at PBSP on April 18, 2016. (Am. Compl. at 41, 53.) Plaintiff claims that Defendant Thomas improperly discontinued his medications, (*Id.* at 41-42, 51-52), denied him a medical diet and referral to a dietician, (*id.* at 42, 53), and refused to

3

present his case to PBSP's pain management committee, (*id.* at 42). Plaintiff also claims that he filed an inmate grievance regarding the denial of pain medication, referral to a dietician, and referral to pain committee, but Defendant Dr. Jacobsen improperly denied it and failed to present his case to the pain committee. (*Id.* at 45.) Plaintiff claims that he was improperly denied special medical transportation when he was transferred to CMF for court appearance, and all his medications were improperly discontinued when he returned to PBSP. (*Id.* at 50.) Plaintiff claims he filed an inmate grievance regarding the denial of special transport and lower bunk chrono, but Defendant Mclean improperly denied it. (*Id.* at 52.) Plaintiff remained at PBSP until February 7, 2017. (*Id.* at 41, 53.)

**C.** **Conditions of Confinement Claims Against All Defendants**

Plaintiff claims generally that "certain officials" discriminated against him and treated him harshly because of his drug use history. (Am. Compl. at 15.) He claims that these officials violated his constitutional rights by failing to provide him adequate medical care, failing to treat his pain and other symptoms, ignoring his medical needs, endangering his personal safety, failing to order a medical diet or other accommodations, malnourishing him, causing him to lose weight, putting him in a general population setting without a lower bunk assignment, forcing him to participate in the mental health delivery system, transferring him to a sensitive needs yard without a hearing, and forcing him to take psychotropic medication. (*Id.* at 15-16.)

**D.** **Claims Regarding Exhaustion of Administrative Remedies**

Plaintiff claims that he exhausted available administrative remedies for his claims in this action. (Am. Compl. at 2.) Plaintiff claims that his inmate grievance log No. SQ-HC-14039462, which he filed on August 20, 2014, in the SQSP appeals office, exhausted all his claims against SQSP Defendants Alvarez, Deal, Devers, Leighton, Pratt, Tootell, and Wu. (*Id.*, Ex. D (Docket No. 11-4 at 1-9).) Plaintiff also claims that inmate grievance log Nos. PBSP-HC-16029784, PBSP-HC-16030006, PBSP-HC-16030048, and PBSP-S-16-02272, which he filed with the PBSP appeals office, exhausted all claims against PBSP

Defendants. (*Id.* at 3.)

## II.    __Summary Judgment__

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citations omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Id*. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. *See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id*. at 631. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Id*. If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. *See id.; see, e.g., Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

### A.     Statement of Facts

The following facts are undisputed unless otherwise indicated. While incarcerated at SQSP and PBPS, Plaintiff submitted fifteen healthcare grievances about various issues. (Lewis Decl. ¶ 9; Voong Decl. ¶ 9.) Plaintiff also initiated over 20 non-healthcare related grievances. (Sheldon Decl. ¶ 14.) However, only eight of the health care grievances and five of the regular grievances were exhausted to the final levels of review. (Lewis Decl. ¶ 9; Voong Decl. ¶ 9.) None of the five regular grievances that were exhausted are related to the claims in the instant action. (Voong Decl. ¶¶ 9-14.) The only inmate grievances discussed below are the ones specifically identified by Plaintiff as exhausting his claims, *see supra* at 4, and those which Defendants identify as reaching a third level review decision but still failing to satisfy the exhaustion requirement for the claims in this action.

### 1.     No. SQ-HC-14039462

Plaintiff identified health care grievance No. SQ-HC-14039462 as exhausting his claims against SQSP Defendants. (Am. Compl. at 2, Ex. D.) In this grievance, Plaintiff complained that a SQSP physician improperly discontinued his previously prescribed pain

6

medication Tramadol on July 25, 2014.  (Lewis Decl. ¶ 10, Ex. B.)  For relief, Plaintiff requested that the doctor continue prescribing him Tramadol.  (*Id.*)  Plaintiff later, in the amended complaint, identified Dr. Deal as the physician who allegedly discontinued his pain medication.  (Am. Compl. at 22; Docket No. 11-4 at 1-9, Ex. D.)  The first level review denied the grievance.  (Lewis Decl. ¶ 10.)  Plaintiff submitted the matter to the second level review but added two new issues: (1) his differences with Defendant Dr. Pratt concerning her approach and attention to his medical complaints; and (2) his request for a bottom bunk accommodation.  (*Id.* at ¶ 11, Ex. C.)  The second level review denied the grievance regarding the discontinuation of Tramadol and notified Plaintiff that the grievance process did not allow him to add new issues at the second level review.  (*Id.*); Cal. Code Regs., tit. 15, §§ 3084.1(b), 3084.2(b)(2).  Dissatisfied with the second level review response, Plaintiff submitted the grievance to the third level review.  (Lewis Decl. ¶ 12, Ex. D.)  In the third level review submission, Plaintiff limited his grievance to the original issue – discontinuation of his medication (Tramadol).  The third level review denied the grievance on January 6, 2015.  (*Id.*)

### 2.    <u>No. PBSP-HC-16029784</u>

Plaintiff identified health care appeal No. PBSP-HC-16029784 as one of the grievances that exhausted his claims against PBSP Defendants.  (Am. Compl. at 3.)  Plaintiff complained that a doctor improperly discontinued his pain, cramping, diarrhea, and indigestion medications.  (Lewis Decl. ¶ 13, Ex. E.)  Plaintiff requested that the medications be reissued, and that he receive a medical diet of some kind.  (*Id.*)  Defendant Jacobsen partially granted the appeal at the first level review.  (*Id.*)  At the second level review, McCurdy identified the "doctor" as Defendant Thomas; the appeal was partially granted at the second level review by Defendant McLean.  (*Id.* at ¶ 14, Ex. F.)  The third level review denied the grievance on December 16, 2016.  (*Id.* at ¶ 15, Ex. G.)

### 3.    <u>No. PBSP-HC-16029757</u>

In health care appeal No. PBSP-HC-16029757, Plaintiff complained that

Psychiatrist Kahn, a non-party to this action, refused to treat his mental health issues with medication, and requested medication to treat his attention deficit disorder. (Lewis Decl. ¶ 16, Ex. H.) The third level review denied the grievance on December 13, 2016. (*Id.*)

### 4. <u>No. PBSP-HC-16030006</u>

Plaintiff identified health care appeal No. PBSP-HC-16030006 as one of the grievances that exhausted his claims against PBSP Defendants. (Am. Compl. at 3.) In this grievance, Plaintiff complained that he had an abdomen condition "with IBS like symptoms," and sought special transport when he is transferred between institutions and to court. (Lewis Decl. ¶ 17, Ex. I.) Defendant McLean denied the request for accommodations at the second level of review. (*Id.*) The third level review denied the appeal on March 10, 2017. (*Id.* at ¶ 18, Ex. J.) This was ten days after Plaintiff filed this lawsuit on February 28, 2017. (Mot. at 8; Docket No. 1.)

### 5. <u>No. PBSP-HC-16030048</u>

Plaintiff identified health care appeal No. PBSP-HC-16030048 as one of the grievances that exhausted his claims against PBSP Defendants. (Am. Compl. at 3.) In this grievance, Plaintiff complained that his requests for a lower bunk chrono and more time to eat his meals were improperly denied. (Lewis Decl. ¶ 19, Ex. K.) Defendant McLean denied the appeal at the second level review. (*Id.*) The third level review denied the grievance on April 12, 2017, because Plaintiff had no medical indication requiring a lower bunk chrono and more time to consume his meals. (*Id.* at ¶ 20, Ex. L.) This was more than a month after Plaintiff filed this lawsuit on February 28, 2017. (Mot. at 8; Docket No. 1.)

### 6. <u>No. PBSP-HC-16030018</u>

In health care appeal No. PBSP-HC-16030018, Plaintiff complained that Psychiatrist Peterson, a non-party to this action, refused to prescribe him Gabapentin and other anxiety medications to treat his pain and mood disorder, and requested Gabapentin and other non-formulary anxiety medications. (Lewis Decl. ¶ 21, Ex. M.) Defendant

8

McLean partially granted the appeal at the second level review. (*Id.*) The third level review denied the grievance on April 12, 2017, because Plaintiff had no current condition that met the criteria for non-formulary use of Gabapentin. (*Id.*) This was more than a month after Plaintiff filed this lawsuit on February 28, 2017. (Mot. at 8; Docket No. 1.)

### 7. No. PBSP-HC-17030102

In health care appeal No. PBSP-HC-17030102, Plaintiff complained of the cancellation of his other grievance log No. PBSP-HC-17030085, which involved a request for a $5 refund for medical copayment. (Lewis Decl. ¶ 22, Ex. N.) The third level review denied the grievance on May 11, 2017, because it determined that the cancellation was proper. (*Id.*)

### 8. No. PBSP-HC-17030116

In health care appeal No. PBSP-HC-17030116, Plaintiff complained that he was improperly placed on razor restriction and requested the following remedies: removal of the restriction, emergency processing of his appeal, monetary compensation, interview in a private setting, and to be seen and treated by a different psychiatrist and physician. (Lewis Decl. ¶ 23, Ex. O.) The first and second reviews partially granted Plaintiff's requests regarding treatment by a different psychiatrist and physician and interview in a private setting but denied the remaining requests. (*Id.*) On July 28, 2017, the third level review denied the grievance. (*Id.*) This was five months after Plaintiff filed this lawsuit on February 28, 2017. (Mot. at 9; Docket No. 1.)

### 9. No. PBSP-S-16-02272

Plaintiff identified inmate appeal No. PBSP-S-16-02272 as one of the grievances that exhausted his claims against PBSP Defendants. (Am. Compl. at 3.) In this grievance, Plaintiff complained that Officer Hurley, a non-party, refused to give him a morning meal on September 29, 2016, and that she inappropriately spread his confidential medical information. (Sheldon Decl. ¶ 16, Ex. B.) For relief, Plaintiff requested that Officer Hurley not be assigned to escort him in the future. (*Id.*) The first level review denied the

grievance. (*Id.*) However, Plaintiff did not submit and exhaust this grievance to the second and third level reviews. (*Id.*) Plaintiff did not make any claims against Defendant Jacobsen, McLean, or Thomas in this grievance. (*Id.*)

**B.    Exhaustion**

The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and no longer left to the discretion of the district court. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards." *Id*. Even when the relief sought cannot be granted by the administrative process, i.e., monetary damages, a prisoner must still exhaust administrative remedies. *Id*. at 85-86 (citing *Booth*, 532 U.S. at 734). The PLRA's exhaustion requirement requires "proper exhaustion" of available administrative remedies. *Id*. at 93. An action must be dismissed unless the prisoner exhausted his available administrative remedies <u>before</u> he or she filed suit, even if the prisoner fully exhausts while the suit is pending. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002); *see Vaden v. Summerhill*, 449 F.3d 1047, 1051 (9th Cir. 2006) (where administrative remedies are not exhausted before the prisoner sends his complaint to the court it will be dismissed even if exhaustion is completed by the time the complaint is actually filed). But a prisoner satisfies the exhaustion requirement as long as he exhausted his administrative remedies prior to filing an amended complaint. *See Rhodes v. Robinson*, 621 F.3d 1002, 1006 (9th Cir. 2010) (amended complaint raised new claims which arose after the original complaint was filed); *Cano v. Taylor*, 739 F.3d 1214, 1220 (9th Cir. 2014) (amended complaint raised new claims which arose before the original complaint was filed).

The California Department of Corrections and Rehabilitation ("CDCR") provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). It also provides its inmates the right to file administrative appeals alleging misconduct by correctional officers. *See id*. Under the current regulations, in order to exhaust available administrative remedies within this system, a prisoner must submit his complaint on CDCR Form 602 (referred to as a "602") and proceed through three levels of appeal: (1) first formal level appeal filed with one of the institution's appeal coordinators, (2) second formal level appeal filed with the institution head or designee, and (3) third formal level appeal filed with the CDCR director or designee. *Id*. § 3084.7.

Compliance with prison grievance procedures is all that is required by the PLRA to "properly exhaust." *Jones v. Bock*, 549 U.S. 199, 217-18 (2007). The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. *Id*. at 218. In California, the regulation requires the prisoner "to lodge his administrative complaint on CDC form 602 and 'to describe the problem and action requested.'" *Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010) (quoting Cal. Code Regs. tit. 15 § 3084.2(a)); *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (same). California regulations also require that the appeal name "all staff member(s) involved" and "describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(a)(3).

The grievance need not include legal terminology or legal theories unless they are needed to provide notice of the harm being grieved. *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). Nor must a grievance include every fact necessary to prove each element of an eventual legal claim. *Id*. The purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. *Id*. The

grievance should include sufficient information "to allow prison officials to take appropriate responsive measures." *Id*. (citation and internal quotation omitted) (no exhaustion where grievance complaining of upper bunk assignment failed to allege, as the complaint had, that nurse had ordered lower bunk but officials disregarded that order); *see Wheeler*, 772 F.3d at 840 (claim properly exhausted where inmate described nature of the wrong and identified defendant as a responding officer who applied pressure to inmate's ankle deliberately to inflict pain).

Nonexhaustion under § 1997e(a) is an affirmative defense. *Jones*, 549 U.S. at 211. Defendants have the burden of raising and proving the absence of exhaustion, and inmates are not required to specifically plead or demonstrate exhaustion in their complaints. *Id.* at 215-17. In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). Otherwise, defendants must produce evidence proving failure to exhaust in a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *Id.* If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. *Id*. at 1166. But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary proceeding. *Id.*

The defendant's burden is to prove that there was an available administrative remedy and that the prisoner did not exhaust that available administrative remedy. *Id*. at 1172; *see id*. at 1176 (reversing district court's grant of summary judgment to defendants on issue of exhaustion because defendants did not carry their initial burden of proving their affirmative defense that there was an available administrative remedy that prisoner plaintiff failed to exhaust); *see also Brown v. Valoff*, 422 F.3d 926, 936-37 (9th Cir. 2005) (as there can be no absence of exhaustion unless some relief remains available, movant claiming lack of exhaustion must demonstrate that pertinent relief remained available,

whether at unexhausted levels or through awaiting results of relief already granted as result of that process). Once the defendant has carried that burden, the prisoner has the burden of production. *Albino*, 747 F.3d at 1172. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *Id*. But as required by *Jones*, the ultimate burden of proof remains with the defendant. *Id*.

### 1. Exhaustion of Claims Against SQSP Defendants

Defendants argue that Plaintiff failed to exhaust his administrative remedies with respect to his claims against SQSP Defendants except for one claim. (Mot. at 16-18.) In the amended complaint, Plaintiff identified health care appeal No. SQ-HC-14039462 as exhausting his claims against SQSP Defendants. (Am. Compl. at 2, Ex. D.) Defendants submit evidence showing that this grievance was the only health care appeal that Plaintiff exhausted during the relevant time of this lawsuit. (Lewis Decl. ¶ 9.) Plaintiff stated the subject of the appeal as "[t]he doctor has discontinued my medication." (*Id.*, Ex. B at 1.) Plaintiff then described the issue as follows: "I have been in constant pain since the doctor discontinued the medication I was previously prescribed. This occurred on 7/25/14, the medication was Tramadol 2, 50 mg. tablets a day." (*Id.*; Am. Compl., Ex. D at 1-3.) The only relief Plaintiff sought was "for the doctor to continue me on Tramadol." (*Id.*) Although he fails to name "the doctor" in the appeal, Plaintiff identified in the amended complaint that Dr. Deal was the doctor who tapered his pain medication and against whom he filed appeal No. SQ-HC-14039462. (Am. Compl. at 22, Ex. D at 1-9.) Dr. Deal is a defendant in this action. As such, Defendants concede that Plaintiff has exhausted his claim regarding the discontinuation of Tramadol against Defendant Deal. However, Defendants assert that health care appeal No. SQ-HC-14039462 did not exhaust any of the other 13 medical claims Plaintiff alleged against the other SQSP Defendants in this action, nor his claim that he was subjected to bad living conditions at SQSP. (Mot. at 17-18.) Therefore, Plaintiff cannot rely on appeal No. SQ-HC-14039462 to demonstrate

13

1    exhaustion because it did not give the prison fair notice of Plaintiff's other claims against

2    SQSP Defendants Alvarez, Deal, Devers, Lee, Leighton, Pratt, Rivero, Tootell, and Wu.

3    (*Id.* at 18.)

4           In opposition, Plaintiff asserts that appeal No. SQ-HC-14039462 exhausted other

5    claims, including claims against Dr. Alvarez for discontinuing his medication on

6    December 4, 2014 and for refusing to treat him a month later, (Opp. at 9), his claim against

7    Dr. Deal for discontinuing Gabapentin, (*id.* at 9-10), Dr. Leighton for improper

8    prescription of Ibuprofen, Acetaminophen, and Elavil, (*id.* at 10), and Dr. Pratt for

9    improperly denying his grievance, improperly considering his medical records from county

10   jail, and denying narcotics, (*id.*).  Plaintiff also asserts that he named Defendant Pratt in his

11   602 appeal, which was granted in part by RN Paley, not a party to this action.  (*Id.*)  With

12   regards to the remaining claims, he asserts his "belief that [he] exhausted remedies in

13   regards to claims 6-13," and that "most of [the] claims mentioned in [his] complaint were a

14   direct result of medical officials [discontinuing his] medications."  (*Id.*)  In support,

15   Plaintiff relies on *Griffin*, 557 F.2d at 1120, asserting that "if policy doesn't have specific

16   requirements[,] a 602 suffices if it alerts the prison to the nature of the wrong for which

17   redress is sought as in a notice pleading system," and that a grievance "need not include

18   legal terminology or theories unless they are in some way needed to provide notice of the

19   harm being grieved."  (*Id.*)  Plaintiff also alleges that the grievance system at SQSP was

20   unavailable to him because an emergency grievance he submitted, alleging officials

21   refused to see him or care for him and provide him medical records, was not answered; he

22   alleges that officials lost or destroyed the appeal.  (Opp. at 8.)

23          In reply, Defendants assert that Plaintiff fails to produce any evidence raising a

24   triable issue of fact that he exhausted any of the remaining claims in his complaint.  (Reply

25   at 4.)  With respect to Plaintiff's argument that he exhausted his claims against Dr.

26   Alvarez, Defendants point out that he could not have included such claims in health care

27   appeal No. SQ-HC-14039462, because the alleged misconduct by Dr. Alvarez occurred on

28

14

1   December 4, 2014, which was approximately four months *after* Plaintiff had already

2   submitted the appeal on August 8, 2014.  (Reply at 4.)  Defendants also argue that appeal

3   No. SQ-HC-14039462 could not have exhausted any other claims because the only claim it

4   raised was the discontinuation of Tramadol 2, 50 mg tablet, and nothing else.  (*Id.* at 5.)

5   Furthermore, Defendants assert that Plaintiff's argument that he added and exhausted more

6   issues at the second level review does not raise triable issues of fact because the grievance

7   process does not allow him to add new issues at the second level review.  (Reply at 5); Cal.

8   Code Regs. tit. 15, §§ 3084.1(b).  Plaintiff was advised of this prohibition in the second

9   level review decision.  (Lewis Decl., Ex. C.)  Then when Plaintiff submitted the grievance

10  to the third level review, he limited the grievance to the original issue – discontinuation of

11  his pain medication, Tramadol.  (*Id.*, Ex. D.)  Plaintiff never filed a separate grievance

12  addressing the new issues he raised at the second level review for appeal No. SQ-HC-

13  14039462.  Lastly, with respect to Plaintiff's assertion that administrative remedies were

14  unavailable, Defendants assert that Plaintiff fails to provide evidence to support his

15  argument, e.g., a copy of the alleged emergency grievance, or allege that he attempted to

16  follow up with the appeals office or the person to whom he submitted the grievance.

17  (Reply at 5.)  As such, Defendants assert that Plaintiff did not take advantage of all the

18  procedures available to him.  (*Id.* at 6.)

19          Viewing the undisputed evidence in the light most favorable to Plaintiff, the Court

20  finds that Plaintiff failed to properly exhaust his administrative remedies for all claims

21  against SQSP Defendants through inmate appeal No. SQ-HC-14039462, except for the

22  discontinuation of Tramadol claim against Defendant Deal.  *See Albino*, 747 F.3d at 1166.

23  First of all, Plaintiff makes no mention of any other Defendant in appeal No. SQ-HC-

24  14039462 or identify any issue other than the discontinuation of Tramadol on July 24,

25  2015, by a doctor whom he later identified as Dr. Deal.  Although Plaintiff is correct that

26  generally, an inmate appeal is sufficient if it provides the prison with sufficient notice of

27  the harm being complained of, *Griffin* also requires that the grievance include sufficient

28

15

information "to allow prison officials to take appropriate responsive measures." 557 F.3d at 1120. Based on the information provided in the appeal, it cannot be said that the prison had notice of any claim other than the discontinuation of Tramadol which required "appropriate responsive measures." *Id.* Furthermore, the regulations specifically require that the appeal name "all staff member(s) involved" and "describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(a)(3). Appeal No. SQ-HC-14039462 clearly did not satisfy these requirements with respect to any of the other claims against SQSP Defendants in this action. The only action Plaintiff specifically requested in the appeal was that his Tramadol medication be continued. With respect to the allegations added to the second level review, Plaintiff does not dispute that he removed the additional claims when he submitted the appeal to the third level review, which means he could not have exhausted any other claim except the discontinuation of Tramadol through the third and final level of review for appeal No. SQ-HC-14039462.

Lastly, with respect to the allegation that Plaintiff filed an emergency grievance which went unanswered, the Court finds Plaintiff has failed to meet his burden of proving that there was something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *Albino*, 747 F.3d at 1172. Even if we assume that Plaintiff did file such an appeal, there is no evidence that he exhausted all available remedies with respect to that appeal. As Defendants point out, the regulation requires emergency grievances to be reviewed and responded to within five working days. (Reply at 6); Cal. Code Regs. tit. 15, § 3084.9(a)(4). Defendants assert that when Plaintiff received no response within five days, Plaintiff could have inquired about the status of his alleged grievance, filed a new grievance, or submitted the purported grievance to the Appeals Office. (*Id.*) He did not.

"Considerable deference is owed to those who administer prison systems." *Fuqua v. Ryan*, 890 F.3d 838, 845 (9th Cir. 2018). "When an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate

16

should err on the side of exhaustion." *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016). Courts may not create their own "special circumstances" exceptions to the exhaustion requirement. *Id.* at 1856 (reversing Fourth Circuit's ruling that failure to exhaust was justified where prisoner reasonably—even though mistakenly—believed he had exhausted remedies). Nevertheless, there are "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Third, an administrative remedy is not available "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1863. Plaintiff has failed to submit evidence showing that any of these exceptions apply to his case. With respect to the first and second circumstances under *Ross*, there is no evidence that inmate grievance system at SQSP was a "simple dead end" or "incapable of use." 136 S. Ct. at 1859. On the contrary, as Defendants point out, Plaintiff's history of grievances shows that he routinely used the grievance process at SQSP, submitted five health care appeals, and received relief from prison officials on multiple occasions. (Lewis Decl. ¶¶ 8-10.) Lastly, as discussed above, *see supra* at 16, Plaintiff could have followed-up regarding his emergency grievance with either the appeals office or the person to whom he submitted the matter, but there is no evidence or allegation that he ever did so. He provides no evidence to support his otherwise conclusory allegation that prison officials "purposely lost or destroyed this appeal," thereby "thwarting" him from taking advantage of the grievance process through "machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1863.

  Based on the foregoing, Defendants have shown that Plaintiff failed to properly

exhaust all available administrative remedies with respect to his claims against all SQSP

Defendants, except for the single claim against Defendant Deal for discontinuing his

Tramadol medication.  Plaintiff has failed in opposition to show that there was something

in his particular case that made the existing and generally available administrative

remedies effectively unavailable to him or that he was incapable of filing a timely appeal.

*Albino*, 747 F.3d at 1172.  Accordingly, inmate appeal No. SQ-HC-14039462 does not

constitute proper exhaustion of Plaintiff's claims against all the other SQSP Defendants or

any other claim against Defendant Deal.  Accordingly, SQSP Defendants are entitled to

summary judgment under Rule 56 based on Plaintiff's failure to exhaust administrative

remedies of all the claims against them except for the sole claim against Defendant Deal

discussed above.  *Id.* at 1166.

## 2.    **Exhaustion of Claims Against PBPS Defendants**

Defendants argue that Plaintiff failed to exhaust his administrative remedies with

respect to his claims against PBSP Defendants Jacobsen, McLean, and Thomas except for

one claim.  (Mot. at 18-20.)    In the amended complaint, Plaintiff identified appeal Nos.

PBSP-HC-16029784, PBSP-HC-16030006, PBSP-HC-16030048, and PBSP-S-16-02272

as exhausting his claims against PBSP Defendants.  (Am. Compl. at 3, Ex. D.)  Defendants

assert that the only claim that was exhausted was against Defendant Thomas for

improperly discontinuing Plaintiff's pain, cramping, diarrhea, and indigestion medications

in appeal No. PBSP-HC-16029784.  (Mot. at 18.)

With respect to the other appeals identified by Plaintiff, Defendants assert that No.

PBSP-HC-16030006 does not satisfy the exhaustion requirement because it was exhausted

on March 10, 2017, which was *after* Plaintiff filed this lawsuit on February 28, 2017. (Mot.

at 19.)  Plaintiff asserts in opposition that he is permitted to file an amended complaint to

add newly exhausted issues.  (Opp. at 12.)  Plaintiff is correct since the Ninth Circuit found

that a prisoner satisfies the exhaustion requirement as long as he exhausted his

administrative remedies prior to filing an amended complaint.  *See Rhodes*, 621 F.3d at

18

1006.  In reply, Defendants rely on *Akhtar v. J. Mesa*, 698 F.3d 1202 (9th Cir. 2012), to

oppose this argument.  (Reply at 7.)  In *Akhtar*, the Ninth Circuit was following its

decision in *Rhodes*, 621 F.3d at 1007, which permitted a plaintiff to file an amended

complaint adding new claims based on conduct that occurred *after* the filing of the initial

complaint as long as he exhausted the new claims before filing the amended complaint.  *Id.*

However, two years later the Ninth Circuit decided *Cano v. Taylor*, 739 F.3d 1214, which

expanded the rule to adding claims in an amended complaint that occurred *before* the

initial complaint as long as they were exhausted before the amendment.  *Id.* at 1220.

Accordingly, Plaintiff was permitted to file an amended complaint adding new claims as

long as he exhausted them before June 9, 2017, when he filed the amendment.  (Docket

No. 11)  However, relying on appeal No. PBSP-HC-16030006 to establish exhaustion of

his claim regarding the denial of special transport accommodations is problematic because

he made the initial request for travel accommodations in the appeal itself, *see supra* at 8,

and there is no evidence that Plaintiff ever filed a separate appeal thereafter challenging the

denial of the request for accommodations that he made in appeal No. PBSP-HC-16030006.

Furthermore, Plaintiff did not specifically name PBSP Defendants Jacobsen, McLean, or

Thomas in the appeal or describe their actions in connection with his request for

transportation accommodations.  *See* Cal. Code Regs. tit. 15, § 3084.2(a)(3).  Lastly, with

respect to appeal No. PBSP-HC-16030048, it was also denied by the third level review on

April 12, 2017, *see supra* at 8, which was before Plaintiff filed the amended complaint.

Therefore, it appears that Plaintiff properly exhausted the claim that his requests for a

lower bunk chrono and more time to eat meals were improperly denied.  However,

Plaintiff again failed to specifically name PBSP Defendants Jacobsen, McLean, or Thomas

in the appeal or describe their actions in connection with the denial of his requests.  *See*

Cal. Code Regs. tit. 15, § 3084.2(a)(3).  Furthermore, with respect to his claim that

Defendants Jacobsen and McLean wrongfully denied his appeals at the first and second

level reviews for these appeals, Plaintiff should have filed a separate appeal challenging

19

their decision to exhaust these claims against them. He did not. Accordingly, although appeal Nos. PBSP-HC-16030006 and PBSP-HC-16030048 were exhausted before the amended complaint was filed, it cannot be said that Plaintiff properly exhausted any claim against PBSP Defendants through those appeals.

With respect to appeal No. PBSP-S-16-02272, Plaintiff did not submit the matter to the second and third level reviews after the first level review denied it on October 25, 2016. *See supra* at 9-10. Furthermore, the appeal only involves Officer Hurley, who is not a party to this action, and no PBSP Defendant or their actions are mentioned in the appeal. Accordingly, appeal No. PBSP-S-16-02272 did not exhaust any of the claims in this action against any PBSP Defendant.

Defendants identify three other appeals which were completed through the third level review, but which they contend do not exhaust any claims against PBSP Defendants. First, Appeal No. PBSP-HC-16030018 involved only claims against a non-party to this action, Psychiatrist Peterson. (Mot. at 19.) Defendants also assert that this appeal was not completed until April 12, 2017, which was over a month after Plaintiff filed this action. (*Id*.) But as the Court explained above, a prisoner satisfies the exhaustion requirement as long as he exhausted his administrative remedies prior to filing an amended complaint. *See Cano*, 739 F.3d at 1220. However, the appeal only involves Psychiatrist Peterson, who is not a party to this action, and no PBSP Defendant and his actions are mentioned in the appeal. *See supra* at 14. Accordingly, appeal No. PBSP-HC-16030018 did not exhaust any of the claims in this action against any PBSP Defendant.

Defendants also identify appeal No. PBSP-HC-17030102, which sought a $5 refund for a medical copayment. *See supra* at 9. The Court agrees that this appeal did not exhaust any claims in this action because it also did not involve any PBSP Defendant or claim against them. *Id.* Lastly, appeal No. PBSP-HC-17030116 is also not relevant to this action because it does not involve any of the named PBSP Defendants or any claim in this action. *Id.* Even if it did, the third level review denied the appeal on July 28, 2017, *see*

1    *supra* at 9, which was *after* Plaintiff filed the amended complaint on June 9, 2017, and

2    therefore cannot satisfy the exhaustion requirement.

3         In opposition, Plaintiff asserts that appeal No. PBSP-HC-16029784 also exhausted

4    claims against Defendants Jacobsen and McLean because he included them as "the rest of

5    medical staff" and because they are Defendant Thomas's supervisors.  (Opp. at 11.)

6    Plaintiff also asserts that Defendants Jacobsen and McLean are liable because they are

7    "named" in his 602 response, and they denied his 602 "for meds and tx. and

8    accommodations [*sic*]."  (*Id.*)  However, Plaintiff failed to comply with the regulations that

9    require the appeal name "all staff member(s) involved" and to "describe their

10   involvement" since he did not specifically name Defendants Jacobsen and McLean or

11   describe their actions.  Cal. Code Regs. tit. 15, § 3084.2(a)(3).  Nor can it be said that the

12   vague reference to "the rest of medical staff" in appeal No. PBSP-HC-16029784 was

13   sufficient to alert the prison that Plaintiff specifically sought relief against Defendants

14   Jacobsen and McLean, especially since the action he requested was that Defendant

15   Thomas reissue the medications that were discontinued and that adjustments be made to

16   his diet to alleviate his symptoms.  (Lewis Decl., Ex. E.)  Plaintiff also asserts that

17   Defendants Jacobsen and McLean are liable because they became aware of his complaints

18   and failed to act.  (Opp. at 11.)  However, their liability is not at issue.  Rather, the issue is

19   whether Plaintiff administratively exhausted any claim against them through appeal No.

20   PBSP-HC-16029784.  He did not.

21        Based on the foregoing, Defendants have shown that Plaintiff failed to properly

22   exhaust all available administrative remedies with respect to his claims against PBSP

23   Defendants except for the claim against Defendant Thomas for improperly discontinuing

24   his pain, cramping, diarrhea, and indigestion medications.  *See supra* at 18.  Plaintiff has

25   failed in opposition to show that there was something in his particular case that made the

26   existing and generally available administrative remedies effectively unavailable to him or

27   that he was incapable of filing a timely appeal with respect to the other claims.  *Albino*,

28

747 F.3d at 1172.  Accordingly, PBSP Defendants are entitled to summary judgment under Rule 56 based on Plaintiff's failure to exhaust administrative remedies of all the claims against them except for the claim against Defendant Thomas discussed above.  *Id.* at 1166.

### III.  Motion to Dismiss

#### A.  Improper Joinder of Claims and Parties

Defendants also move to dismiss the complaint for failure to comply with Rule 18(a) and Rule 20(a) of the Federal Rules of Civil Procedure.  (Mot. at 10-14.)

Rule 18(a) of the Federal Rules of Civil Procedure allows a plaintiff to properly join as many claims as he has against an opposing party.  Fed. R. Civ. P. 18(a).  But parties may be joined as defendants in one action only "if any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).  Put simply, claims against different parties may be joined together in one complaint only if the claims have similar factual backgrounds and have common issues of law or fact.  *Coughlin v. Rogers*, 130 F.3d 1348, 1350-51 (9th Cir. 1997).

Defendants assert that the amended complaint raises unrelated claims against numerous defendants based on events that allegedly occurred at two different institutions over a course of three years.  (Mot. at 11; Am. Compl. at 6-8, 13-15, 21-26, 41-53.)  Specifically, Plaintiff's claims concerning deliberate indifference to serious medical needs against SQSP Defendants Alvarez, Deal, Devers, Lee, Leighton, Pratt, Rivero, Tootell, and Wu for the alleged denial of proper medical care from June 24, 2014 to January 22, 2015, are wholly unrelated to his claims against PBSP Defendants Jacobsen, McLean, and Thomas for alleged denial of proper medical care from May 10, 2016, to February 7, 2017.  (*Id.*)  With respect to the claims against SQSP Defendants, Plaintiff alleges that the nurses, doctors, and psychiatrists improperly discontinued all his medications, including Tramadol and Gabapentin upon his arrival on June 24, 2014.  (*Id.* at 6, 21-22.)  Plaintiff alleges that

22

Defendant Dr. Deal improperly tapered his Gabapentin, (*id.* at 22), Defendant Dr. Pratt

improperly denied his grievance, (*id.* at 23), Defendant Dr. Leighton improperly prescribed

him medication to which he had side effects, (*id.* at 6, 23), Defendant Dr. Alvarez refused

to treat him on January 8, 2015, (*id.* at 25), that he was forced to participate in the mental

health delivery system at SQSP, and that he was improperly transferred to CMF, (*id.* at 6-

7, 8, 26).  Defendants assert that these allegations are distinct from Plaintiff's claims

against PBSP Defendants Thomas, Jacobsen, and McLean for denial of pain medication,

medical diet, and referral to a dietician, (*id.* at 41-42), denial of inmate grievances, (*id.* at

45, 52), denial of special medical transportation, (*id.* at 50), and for failure to present his

case before PBSP's pain committee, (*id.*), in 2016 and January 2017.  (Mot. at 11.)

Therefore, Defendants assert that Plaintiff's claims against SQSP Defendants are unrelated

to his claims against PBSP Defendants, and no one Defendant is allegedly involved in each

of Plaintiff's claims.  (*Id.*)  Furthermore, there is at least a-year-and-three-month time gap

between the alleged events at SQSP and PBSP, during which time Plaintiff was

incarcerated at CMF and Corcoran State Prison.  (*Id.* at 12.)  As such, Defendants assert

the amended complaint does not comply with Rule 18(a) and should be dismissed based

thereon.  (*Id.*)

      In addition, Defendants assert that the complaint fails to satisfy Rule 20(a) as

Plaintiff does not allege that Defendants participated in the same transaction or series of

transactions because his claims involve specific conduct by Defendants that allegedly

occurred at two different institutions one year and three months apart from each other, with

no connecting facts.  (Mot. at 13.)  Defendants assert that nothing in the amended

complaint links the alleged violations at SQSP and PBSP.  (*Id.*)  For example, Plaintiff's

claims that SQSP Defendants improperly discontinued his medications upon his arrival on

June 24, 2014, (Am. Compl. at 6, 21-22), has nothing to do with his claims that PBSP

Defendants denied his request for pain medication, medical diet, referral to a dietician, or

special medical transportation, (*id.* at 41-42, 50), more than a year later (from April 18,

2016 to February 7, 2017) at PBSP. (Mot. at 13.)

In opposition, Plaintiff asserts that SQSP Defendants "acted in one accord" and in "all the same transaction or series of transactions" when they were deliberately indifferent to his medical needs and created bad living conditions. (Opp. at 2.) In the same way, Plaintiff asserts that PBSP Defendants also "acted in one accord and all of the same transaction or series of transactions when they were deliberately indifferent" to his medical needs and created bad living conditions. (*Id.*) Plaintiff then admits that his complaint includes unrelated claims against Defendants from other prisons. (Opp. at 2.) In reply, Defendants argue that Plaintiff's opposition confirms that his amended complaint fails to comply with Rules 18(a) and 20(a). (Reply at 2-3.)

After carefully reviewing the briefs, the Court finds that the amended complaint does violate Rules 18(a) and 20(a) for the reasons described by Defendants. Furthermore, although the claims against Defendants at SQSP may possibly be joined under Rule 20(a), and likewise the claims against Defendants at PBSP may also be joined in a *separate* action under Rule 20(a), it is clear the claims against these two different groups of Defendants at two different institutions are separate from and unrelated to each other because there are no allegations linking the actions of SQSP Defendants to PBSP Defendants.

Normally, Plaintiff would be afforded at least one opportunity to file a second amended complaint that complies with the FRCP. However, the Court has determined that Plaintiff failed to exhaust all but the following claims: (1) against Defendant Deal at SQSP for discontinuing his Tramadol medication; and (2) against Defendant Thomas at PBSP for improperly discontinuing his pain, cramping, diarrhea, and indigestion medications. *See supra* at 15, 18. Accordingly, Plaintiff may proceed on only one of these claims in this lawsuit since they are improperly joined in this action. Plaintiff shall be given an opportunity to file notice identifying which of these two exhausted claims he wishes to pursue in this action. Plaintiff shall also file notice whether he wishes to pursue the other

claim in a separate action and be subject to the filing fees.

2

**B.**     **Failure to State A Claim**

3       Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement

4   of the claim showing that the pleader is entitled to relief." "Specific facts are not

5   necessary; the statement need only '"give the defendant fair notice of what the…. claim is

6   and the grounds upon which it rests."'" *Erickson*, 551 U.S. at 93(citations omitted).

7   "Factual allegations must be enough to raise a right to relief above the speculative level."

8   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 553-56 (2007) (citations omitted).  To state

9   a claim that is plausible on its face, a plaintiff must allege facts that "allow[] the court to

10  draw the reasonable inference that the defendant is liable for the misconduct alleged."

11  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

12      Defendants assert that although Plaintiff asserts a claim for deliberate indifference

13  to serious medical needs, he alleges nothing against Defendants Devers, Lee, Rivero,

14  Tootell, and Wu.  (Mot. at 14.)  Defendants assert that there is no allegation that any of

15  these Defendants knew that Plaintiff had a serious medical need, that he saw any of these

16  Defendants for medical care, that they were somehow made aware of Plaintiff's serious

17  medical needs, or that they denied him medical care.  (*Id.* at 14-15.)  Defendants also assert

18  that Plaintiff's general allegations that "the nurses, doctors and psychiatrists" at SQSP

19  discontinued all his medications, (Am. Compl. at 6, 22-23), failed to treat his Hepatitis C

20  condition, (*id.* at 21), refused to see him for his multiple complaints in December 2014, (*id.*

21  at 24), forced him to participate in the mental health delivery system, and transferred him

22  to CMF without a hearing, (*id.* at 6-7, 8, 26), are not sufficient to state claims against these

23  Defendants.  (Mot. at 15.)  Therefore, Defendants move for dismissal of his claims for

24  deliberate indifference to serious medical needs against Defendants Devers, Lee, Rivero,

25  Tootell, and Wu.  (*Id.*)

26      In opposition, Plaintiff does not dispute his failure to include any specific

27  allegations against these Defendants.  Rather, he makes new, more specific allegations

28

against them to support a deliberate indifference claim and provides exhibits in support of the allegations. (Opp. at 3-5.) In reply, Defendants assert that neither the allegations nor the exhibits in Plaintiff's opposition supplement the operative complaint to state claims against these Defendants. (Reply at 3.)

After reviewing the briefs and the first amended complaint, the Court finds that Plaintiff did not allege any specific claims against Defendants Devers, Lee, Rivero, Tootell, and Wu in the amended complaint. Furthermore, although Plaintiff's new allegations in his opposition demonstrate that he is capable of stating sufficient facts to support an Eighth Amendment medical claim against them if granted an opportunity to amend, he would not be able to proceed on the new claims because the evidence shows that during the relevant time period of this lawsuit, Plaintiff only exhausted one health care appeal, *i.e.*, No. SQ-HC-14039462, , and that appeal did not include any claims against these Defendants. *See supra* at 13. As discussed above, appeal No. SQ-HC-14039462 involved only a claim against Defendant Deal for the discontinuation of his Tramadol medication. *Id.* Accordingly, the motion to dismiss medical claims against Defendants Devers, Lee, Rivero, Tootell, and Wu is **GRANTED**, without leave to amend.

### C. Moot

Defendants assert that Plaintiff's claim for injunctive relief should be dismissed as moot because he is no longer incarcerated at SQSP or PBSP, having been transferred to the California State Prison – Sacramento. (Mot. at 15.) Specifically, Plaintiff seeks injunctive relief in the form of "ordering defendants to prescribe non-formulary medications for Plaintiff." (Am. Compl. at 56.) As Defendants assert, they are no longer in control of Plaintiff's medical treatment as is not incarcerated at either SQSP or PBSP, where they work. (Mot. at 16.)

Where injunctive relief is involved, questions of mootness are determined in light of the present circumstances. *See Mitchell v. Dupnik*, 75 F.3d 517, 528 (9th Cir. 1996). When an inmate is released from prison or transferred to another prison and there is no

26

reasonable expectation nor demonstrated probability that he will again be subjected to the prison conditions from which he seeks injunctive relief, the claims for injunctive should be dismissed as moot. *Dilley v. Gunn*, 64 F.3d 1365, 1368-69 (9th Cir. 1995); *see also Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012) (same for claims for declaratory relief); *cf. Sadorski v. Mosley*, 435 F.3d 1076, 1080 (9th Cir. 2006) (affirming dismissal of class claim for injunctive relief because inmate was no longer incarcerated pursuant to an unlawfully modified sentence and therefore had no personal stake in the outcome of this litigation) (citing *Flast v. Cohen*, 392 U.S. 83, 101 (1968)).

In opposition, Plaintiff asserts that his request for injunctive relief is not moot because other medical officials at his present place of incarceration are still violating his rights. (Opp. at 6.) But as Defendants point out, Plaintiff does not show how Defendants are responsible for the alleged acts of other medical officials at his current institution. (Reply at 3.) Nor did Plaintiff allege that Defendants are still in charge of his medical care, or that their actions presented any sort of ongoing violation of his rights. (*Id.*) As such, Plaintiff has failed to establish that there is any reasonable expectation or demonstrate probability that he will again be subjected to deliberate indifference to serious medical needs by Defendants. *See Dilley*, 64 F.3d at 1368-69. Accordingly, the motion to dismiss Plaintiff's request for injunctive relief as moot must be granted. *Id.*

## IV. Screening of Supplemental Complaint

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Pro se pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

Plaintiff filed a supplemental complaint, with leave of Court, to attempt to allege sufficient facts to join Mr. J. Clark Kelso to this action under Rule 20(a)(2). (Docket No.

97.)  Plaintiff was advised that he must show that the claims against Mr. Kelso "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants" arise in this action.  (Docket No. 69 at 5); Fed. R. Civ. P. 20(a)(2).  In response to being served by Plaintiff with a "motion for leave to file supplemental complaint," (Desta Decl. ¶ 2, Docket No. 98-1), Defendants filed an opposition to the motion for leave to file a supplemental complaint, asserting that it contains no specific factual allegation against Mr. Kelso and fails to state a claim against him and because it violates the Court's previous order, contains new Defendants and claims that are unrelated to this lawsuit, and contains previously severed and transferred claims.  (Docket No. 98.)

The Court has reviewed the supplemental complaint, which is mostly an identical copy of the amended complaint except for the list of defendants, (Docket No. 97 at 1-4), and the new allegations against newly named defendants from the California Health Care Facility and California State Prison – Sacramento, (*id.* at 32-35).  The only allegation Plaintiff makes against Mr. Kelso is that he "is responsible for all medical officials and care in all California institution."  (*Id.* at 35.)  If the underlying claim is for deliberate indifference to serious medical needs, this general allegation against Mr. Kelso is not sufficient to state an Eighth Amendment claim against him, even under supervisor liability.  A supervisor may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  *Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir. 2012).  Plaintiff has failed to allege any facts showing either of these prongs: (1) there is no allegation that Mr. Kelso was personally involved in deficient medical care; and (2) there is no allegation of wrongful conduct by Mr. Kelso or an explanation of the causal connection to deficient medical care.  *Id.*  Furthermore, under no circumstances is there respondeat superior liability under section 1983.  Or, in layman's terms, under no circumstances is there liability under section 1983 solely because one is

28

responsible for the actions or omissions of another.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680-81 (9th Cir. 1984).  Accordingly, Plaintiff has failed to state a cognizable claim against Mr. Kelso.

With respect to Plaintiff's inclusion of new claims and defendants in the supplemental complaint, the Court specifically granted leave to file a supplemental complaint only to attempt to state a claim against Mr. Kelso.  (Docket No. 69 at 5.)  In the same order, the Court denied Plaintiff's motion for leave to file a second amended complaint.  (*Id.* at 3.)  Therefore, Plaintiff should not be permitted to circumvent that order and include additional claims and defendants through this supplemental complaint.  Accordingly, in the exercise of its discretion, the Court denies leave to file additional claims because it is sought in bad faith.  *See Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 830 (9th Cir. 2003); *Janicki Logging Co. v. Mateer*, 42 F.3d 561, 566 (9th Cir. 1944).

## CONCLUSION

For the reasons stated above, Defendants Alvarez, Deal, Devers, Jacobsen, Lee, Leighton, McLean, Pratt, Rivero, Thomas, Tootell, and Wu's motion for summary judgment, (Docket No. 67), is **GRANTED IN PART**.  The only claims that were exhausted are as follows: (1) claim against Defendant Deal at SQSP for discontinuing his Tramadol medication; and (2) claim against Defendant Thomas at PBSP for improperly discontinuing his pain, cramping, diarrhea, and indigestion medications.  *See supra* at 15, 18.  All the other claims against Defendants are **DISMISSED** for failure to exhaust administrative remedies.  Accordingly, the Clerk shall terminate all Defendants from this action except for Defendants Deal and Thomas.

Defendants' motion to dismiss the complaint for improper joinder of claims and parties is **GRANTED**.  *See supra* at 23-24.  **No later than twenty-eight (28) days** from the date this order is filed, Plaintiff shall notify the Court which of the two exhausted

1   claims against Defendant Deal and Defendant Thomas he wishes to pursue in this action,

2   and whether he wishes to have the other claim severed and opened as a separate action and

3   be subject to the $350 filing fee. **Failure to file a response in accordance with this**

4   **order in the time provided shall result in the dismissal of this action for violating**

5   **pleading requirements under Rules 18(a) and 20(a).**

6         Defendants' motion to dismiss medical claims against Defendants Devers, Lee,

7   Rivero, Tootell, and Wu for failure to state a claim is **GRANTED**. *Id.* at 25-26.

8         Defendants' motion to dismiss Plaintiff's claim for injunctive relief is **GRANTED**.

9   *Id.* at 26-27.

10         Defendants' motion to strike Plaintiff's sur-reply is **GRANTED**. (Docket No. 100.)

11   Plaintiff's motion for an extension of time to file an opposition is **DENIED**. (Docket NO.

12   102.)

13         Plaintiff's supplemental complaint is **DISMISSED** for failure to state a claim

14   against Mr. Kelso. *See supra* at 28-29.

15         This order terminates Docket No. 67, 100, and 102.

16         **IT IS SO ORDERED.**

17   **Dated:**   9/7/2018             

18                                    BETH LABSON FREEMAN
                                    United States District Judge

19

20

21

22

23

24

26

27

28                                        30